**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

# LETTER OPINION

April 17, 2007

William R. Stanley
PO Box 8223
Jersey City, NY 07308

    *(Attorney for Plaintiff)*

John M. Kelly
Karen M. Ortiz
Kimberly L. Schiro
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278

    *(Attorney for Defendant)*


    RE:    <u>**Flores v. Commissioner of Social Security**</u>
             <u>**Civ. No. 05-5119 WJM**</u>

Dear Counsel:

    Plaintiff Maria G. Flores ("Flores") brings this action pursuant to 42 U.S.C. § 405(g) (2006) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## Background and Procedural History

    Flores is a sixty-one year old female with limited education. (R. at 22.) She last worked as a sewing machine operator for four years. (Pl.'s Br. at 3; R. at 22.) She held this position

until November 15, 2001.  (Pl. Br. at 3.)  Prior to this, Flores worked as an office cleaner from 1991 to 1992.  (R. at 25.)  She also worked as a sewing machine operator from 1979 to 1988.  (R. at 25.)  Flores applied for DIB on November 5, 2002, alleging a period of disability based on two dislocated discs, osteoporosis, and a pinched nerve in her arm.  (R. at 22, 84.)  This application was denied initially and on reconsideration.  In a hearing decision dated January 25, 2002, Administrative Law Judge Dennis O'Leary ("the ALJ") found that Flores was not entitled to a period of disability.  (R. at 22.)  The Appeals Council later denied review of the ALJ's ruling.  (R. at 5.)

Applying the familiar five-step analysis for determining whether a claimant is disabled, the ALJ first found that Flores had not engaged in any substantial gainful activity since her alleged onset date.  (R. at 23.)  Then, at step two, the ALJ found that Flores' degenerative changes in her cervical spine were "severe."  (R. at 23.)  At step three, the ALJ determined that Flores' degenerative changes did not meet or equal one of the impairments listed in Listing 1.04 of Appendix 1, Subpart P, Regulations No. 4.  (R. at 23.)  Next, at step 4, the ALJ determined that Flores retained the residual functional capacity to perform light work activity.  (R. at 25.)  The ALJ's inquiry ended there, though, as he found that Flores could return to her past relevant work (R. at 25) thereby precluding a finding of disability.  20 C.F.R. § 416.920(a)(4)(iv) (2006).  Consequently, the ALJ found that Flores was not entitled to DIB.  (R. at 26.)

Flores subsequently filed a complaint in this Court.  Pursuant to Local Rule 9.1, Flores moved for judgment on the pleadings.  In her motion, she argues: (1) the ALJ erred by ignoring certain diagnosed impairments; (2) the ALJ erred in finding that she has the residual functional capacity to perform "light work"; (3) the ALJ incorrectly found her capable of performing her past relevant work; and (4) the ALJ improperly rejected her testimony without considering all of the evidence or properly applying the Commissioner's rules and regulations.  Flores's motion is now before the Court.

**Standard of Review**

In reviewing the ALJ's decision, the Court exercises plenary review over questions of law.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  In contrast, the Court must determine whether the ALJ's findings of fact are supported by substantial evidence in the record.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 503 (D.N.J. 2005).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance").  Thus, this Court's inquiry is limited to whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v.*

*Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

## Discussion

1.  **Evaluation of the Medical Evidence**

Flores first argues that the ALJ incorrectly assessed the medical evidence at step two of his analysis. In particular, Flores argues that: (a) the ALJ overlooked certain medical evidence establishing the existence of various severe impairments; and (b) the ALJ improperly evaluated the opinions of Flores's treating physician, Dr. Frank Diaz. Because the Court finds that the ALJ properly evaluated the medical evidence at step two, Flores's argument on this ground is denied.

   a.  **Consideration of Flores's Other Impairments**

Flores argues that the ALJ erred at step two by overlooking evidence of other severe impairments beyond degenerative changes in the cervical spine. In particular, Flores claims that the ALJ overlooked: (1) a report from her consultative physician, Dr. Alan Friedman, diagnosing her with osteoporosis, arthritis and "most likely" osteoarthritis (R. at 140); (2) a bone density test revealing osteoporosis of the lumbar spine and osteopenia of the left hip (R. at 174); (3) an x-ray revealing mild spondylosis at C5-6 (R. at 141); (4) a 2001 MRI revealing forminal compression at multiple levels of the cervical spine (R. at 172)[1]; and (5) a nerve study showing carpal tunnel syndrome at multiple levels. In sum, Flores argues that these reports establish the existence of other severe impairments. According to Flores, the ALJ's failure to consider these other impairments constitutes reversible error.

The Court disagrees. First off, the ALJ's opinion shows that he expressly considered the bone density test, which revealed osteoporosis of the lumbosacral spine and osteopenia of the left hip. (R at 24.) The ALJ's opinion also indicates that he reviewed the nerve study, which revealed mild neuropathy of the wrists (i.e., carpal tunnel syndrome). Moreover, the ALJ also reviewed the consultative examination of Dr. Friedman and the MRI. (R. at 24.) Therefore, Flores's claim that the ALJ failed to review this evidence is meritless.

Furthermore, substantial evidence supports the ALJ's conclusion that Flores suffered from only one severe impairment. In his opinion, the ALJ did not deny that Flores suffered from carpal tunnel syndrome, osteoporosis, and ostepenia. (R. at 24.) However, for these impairments to be severe, they had to significantly limit Flores's ability to perform basic work activities. 20 C.F.R. § 404.1521(a). The record, though, undercuts the existence of other severe impairments. For instance, although Flores alleges disability since November 15, 2001, on January 4, 2002, she complained of pain in her right shoulder, right arm, and right chest only for the previous two days. (R. at 204.) She also only complained of a swollen finger on her right hand for the

---

[1]Flores argues that this MRI was taken in 2004. However, a review of the MRI shows that it was taken in 2001.

previous day.  (R. at 204.)  Furthermore, on January 27, 2003, Flores complained of pain in her hands for the previous two weeks.  (R. at 191.)  On July 25, 2003, Flores reported joint pains only for the three preceding days.  (R. at 188.)  To be found disabled, Flores impairments must last for a continuous period of twelve months.  42 U.S.C. § 423(d)(1)(A).

In addition, clinical findings fail to establish severe impairments other than degenerative changes in the cervical spine.  For instance, the ALJ noted that the nerve study revealed carpal tunnel syndrome, but there was no evidence of cervical radiculopathy.  (R. at 24, 329.)  Furthermore, a report from Dr. Robert C. Rubin, who received Flores on reference from her treating physician, noted that her physical examination did not suggest the presence of carpal tunnel syndrome.  (R. at 269.)  Moreover, as the Commissioner correctly points out, the MRI from 2001 failed to reveal cord compression.  (R. at 172.)

The ALJ also noted that examinations of Flores were generally normal.  For instance, a January 2004 report from Flores's treating physician, Dr. Frank Diaz, found no neurological problems.  (R. at 24.)  Furthermore, the ALJ remarked that both Dr. Friedman and Dr. Diaz found her gait and coordination were normal.  (R. at 24.)  In addition, the consultative examination performed by Dr. Friedman in February 2004 "showed full strength in all extremities, reflexes were symmetric in all extremities, normal fine and gross coordination and full range of motion in the cervical and lumbrosacral aspects of the spine as well as the extremities."  (R. at 24.)  In May 2002, Dr. Rubin described Flores's physical examination as "essentially normal."  (R. at 269.)  Dr. Rubin also found that Flores had a full range of motion, her motor strength was normal, and her Tinel sign was negative bilaterally.  (R. at 269.)  A February 2003 examination by Dr. Friedman showed that Flores was able to squat, walk on her toes and heels, and stand on one leg.  (R. at 140.)  Dr. Friedman also noted that Flores had full strength bilaterally in the upper and lower extremities and that her fine and gross motor coordination were normal.  (R. at 140.)  In addition, Dr. Friedman commented that straight leg raising was negative, there was no muscle atrophy, and that Flores had a full range of motion bilaterally in the upper and lower extremities as well as the lumbar and cervical spine.  (R. at 140.)  Moreover, a January 2004 examination by Dr. Gregory D. Anselmi found her gait and coordination to be normal, she had full strength in all areas, a sensory examination was normal, and that there were no neurological abnormalities.  (R. at 251.)

In sum, the ALJ's decision that Flores suffered from only one severe impairment was based on substantial evidence.

     **b.**     **Rejection of Treating Physician's Opinion**

Next, Flores contends that the ALJ erred by not giving controlling weight to the opinion of her treating physician, Dr. Diaz.[2]  Under the Social Security Regulations and the law of this

---

[2]In making this argument, Flores seems to suggest that other physicians she saw constitute "treating physicians."  The Court, though, can only discern one treating physician in

Circuit, opinions of treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. *Id.*; *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001). When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency, and specialization. 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ properly assigned less weight to the reports of Dr. Diaz. The ALJ noted Dr. Diaz's reports indicate that Flores was neurologically intact with no motor or sensory deficits in any extremities. (R. at 24.) Furthermore, Dr. Diaz could not pinpoint any exact neurological problems in a January 2004 report. (R. at 24.) These findings were corroborated by Dr. Friedman, who reported full strength in all extremities, reflexes were symmetric, and full range of motion in the cervical and lumbosacral aspects of the spine as well as the extremities. (R. at 24.) Based on the foregoing, the Court finds that the ALJ adhered to the standards for assessing a treating physician's opinion and supported his decision with substantial evidence.

### 2.      Flores's Residual Functional Capacity

Flores next argues that the ALJ erred in his step four analysis. At this step, the ALJ determined that Flores retained the residual functional capacity ("RFC") to perform "light work." (R. at 24.) Specifically, the ALJ found that Flores retained the capacity to sit up to six hours, and stand and walk up to six hours, in an eight hour work day. (R. at 24.) The ALJ also determined that Flores could lift and carry ten pounds frequently and twenty pounds occasionally. (R. at 24.)

Flores takes issue with various parts of this ruling. First, she contends that the ALJ erred by not determining whether she could work on a "regular and continuing basis" as that phrase is used in the Social Security Regulations. Second, Flores argues that the ALJ erred by not including a function-by-function analysis of her physical and mental abilities as mandated by SSR 96-8p. Third, she argues that the ALJ failed to support his RFC conclusion with any medical evidence. Fourth, Flores contends that the ALJ failed to consider all of her impairments, including those considered non-severe. Finally, Flores claims that the ALJ erred by failing to consider her illiteracy in determining her RFC. The Court will address these issues separately below.

#### a.      Ability to Work on a Regular and Continuing Basis

Flores argues that the ALJ's findings are defective because he failed to expressly find that

---

this case: Dr. Diaz.

5

she has the ability to work on a "regular and continuous basis" for eight hours per day, five days per week. At step four, an ALJ must determine whether the claimant is capable of performing substantial gainful work activity on a "regular and continuing basis." *Strunkard v. Sec. of Health & Hum. Servs.*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). Here, the ALJ satisfied this requirement. Although the ALJ did not specifically use the phrase "regular and continuing basis," it is clear that he made such a determination. In his RFC analysis, the ALJ referred to 20 C.F.R. 404.1545. (R. at 24.) This regulation commands the ALJ to determine a claimant's capacity for work on a "regular and continuing basis." *Id*. The ALJ then engaged in an analysis culminating in the conclusion that Flores could return to her past work as a sewing machine operator and office cleaner. The Court will not require an ALJ to use "magic words" to satisfy his duties. *See Sassone v. Comm'r of Soc. Sec.*, 165 Fed. App'x. 954, 959 (3d Cir. 2006) (citing *Jones*, 364 F.3d at 505).

### b.     Function-by-Function Analysis

Next, Flores contends that the ALJ failed to perform a "function-by-function" analysis of her disability. SSR 96-8p states that RFC "is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities." Particularly, the ALJ must consider various functions, such as sitting, standing, walking, lifting, and carrying. 20 C.F.R. §§ 404.1545(b), 416.945. Again, a reading of the ALJ's opinion shows that he undertook this analysis. The ALJ specifically found that Flores could sit up to six hours in an eight hour day, stand and walk up to six hours in an eight hour day, and lift and carry ten pounds frequently and twenty pounds occasionally. (R. at 25-26.) Therefore, Flores argument on this ground is denied.

### c.     Evaluation of Medical Evidence

Citing *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001), Flores next argues that the ALJ must provide a "clear and satisfactory explanation" of the basis upon which his RFC determination rests. Flores contends that the ALJ provided no findings about the basis for his conclusion that she could perform light work. The ALJ, however, was not required to "adhere to a particular format in conducting his analysis," *Jones*, 364 F.3d at 505, and the record demonstrates that he considered the appropriate factors. Specifically, he considered Flores's complaints of pain but found them not credible in light of the medical evidence. (R. at 24.) This finding was supported by Dr. Friedman's report, which found that Flores's reflexes, strength, coordination, and range of motion were normal. (R. at 140.) Dr. Anselmi also found her gait and coordination normal and her motor strength full. (R. at 252.) Dr. Anselmi opined that it was "difficult to pin one thing on this patient." (R. at 253.) Flores's complaints of pain were also contradicted by her own testimony. She stated that she could perform household chores, shop, cart and carry heavy bags, drive a car and prepare meals. (R. at 24, 40-41.) Furthermore, no medical opinions in the record indicated Flores's inability to perform light work, and disability notes from Dr. Diaz only indicated an inability to work from January 30, 2002 to March 12, 2002. Again, to be found disabled, a claimant's impairments must have lasted or have been

expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Moreover, although Flores claims she stopped working in November 2001, Dr. Diaz's treatment notes from July 2002 indicate that she was working after this date and subsequently stopped because she was laid off. (R. at 197, 200.) In all, the Court finds that the ALJ's RFC analysis was sufficient.

### d.  Consideration of All of Flores's Impairments

Flores next argues that the ALJ failed to assess all of her impairments, either singly or in combination, in formulating her RFC. These impairments include her carpal tunnel syndrome, osteoporosis, possible shoulder bursitis, cervical spondylosis, foraminal compression, and osteoarthritis. (Pl.'s Br. at 20.) However, as discussed earlier, the ALJ considered these impairments and found them not severe. Flores also claims that, under SSR 96-8p, the ALJ was required to consider the limitations imposed by the non-severe impairments. But, as the Commissioner correctly points out, after finding that Flores's only severe impairment was degenerative changes of the cervical spine, he then considered the evidence related to Flores's other conditions, such as carpal tunnel syndrome and osteoporosis. (R. at 24.) The ALJ then used these conclusions in formulating Flores's RFC. (R. at 24.) Therefore, Flores's argument on this ground is rejected.[3]

### e.  Flores's Illiteracy

Additionally, Flores argues that the ALJ committed reversible error by failing to consider her illiteracy in determining her RFC. (Pl. Br. at 21.) The Court disagrees. Literacy is a vocational consideration relevant only to step five of the traditional five-step analysis, 20 C.F.R. § 404.1564(b)(1), and is therefore irrelevant to the determination of her RFC. *See* 20 C.F.R. § 416.945(a)(2). The relevant regulation requires the ALJ to consider only all "*medically* determinable impairments," as opposed to vocational considerations. *Id.* (emphasis added). Thus, the ALJ's opinion complied with § 416.945(a)(2).

### 3.  Flores's Ability to Return to Past Relevant Work

Flores next argues that the ALJ erred in finding that she could return to her past relevant work as a sewing machine operator and office cleaner. (Pl. Br. at 22.) According to Flores, the ALJ made three errors. First, contends that the ALJ erred in failing to follow the mandates of SSR 82-62. Second, she claims that the ALJ erred by ignoring medical and vocational findings which would preclude performance of past relevant work. Third, Flores argues that the ALJ failed to call a vocational expert to assist him in assessing her ability to return to past relevant

---

[3] Flores also argues that, to the extent that the ALJ did not understand the impact her non-severe impairments had on her ability to work, he should have ordered a consultative examination. As noted earlier, though, Dr. Friedman actually performed a consultative examination, which showed few abnormalities. (R. at 139-140.)

work.  Because the Court disagrees with each of these arguments, the Court will uphold the ALJ's finding that Flores can return to her past relevant work.

### a.     Application of SSR 82-62

Flores argues that "the ALJ failed to perform a functional analysis of claimant's prior job as performed in the national economy and compare it to her existing capabilities."  (Pl. Br. at 23.)  She argues that this violates the requirements of SSR 82-62, which states in part:

> Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. . . .  In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:  1. a finding of fact as to the individual's RFC[;] 2. A finding of fact as to the physical and mental demands of the past job/occupation[;] 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.  The Court finds that the ALJ satisfied these requirements.  The ALJ found that Flores has the RFC "to perform light work activity."  (R. at 25.)  He then applied U.S. Dept. of Labor, Dictionary of Occupational Titles ("DOT") §§ 689.685-118, 323.687-014 (4th ed. 1991) to find that Flores's past jobs as a sewing machine operator and office cleaner required a light exertional capacity.  (R. at 25.)  Finally, the ALJ found that, based on Flores's RFC, she could return to her past jobs as they are generally performed in the national economy.  (R. at 26.)  Therefore, Flores's argument here is erroneous.

### b.     Ability to Perform Prior Work

Next, Flores argues that she is unable to perform her past relevant work as a sewing machine operator because of her carpal tunnel syndrome and her arm pain.  (Pl. Br. at 24.)  This argument, though, is merely a reiteration of the previously stated argument that the ALJ did not analyze all of Flores' impairments.  As discussed earlier, the ALJ properly considered Flores's RFC.  For the reasons stated above, the ALJ's findings of fact on this point are supported by substantial evidence, and therefore will not be disturbed on appeal.

### c.     Ability to Read

Flores next argues that she is illiterate and that the jobs of sewing machine operator and office clearly require a Level 1 math ability and a Level 2 language ability under the DOT.  Again, illiteracy is a vocational factor.  *See* 20 C.F.R. § 404.1564.  The regulations provide that the Commissioner "will not consider [a claimant's] vocational factors" in determining whether the claimant can perform her past relevant work.  20 C.F.R. § 404.1560(b)(3).  Therefore,

Flores's argument on this ground is meritless.[4]

### d. Vocational Expert

Next, Flores finds fault with the ALJ's failure to call a vocational expert to determine whether she can return to her past relevant work. (Pl. Br. at 25.) She argues that failure to call a vocational expert is reversible error because of the "seemingly complex issues of whether a non-English speaking claimant with [carpal tunnel syndrome] and limited arm usage could work as a cleaner or sewing machine operator." (Pl. Br. at 25.)

The Court disagrees. Vocational experts "are used to 'resolve complex vocational issues.'" *Mays v. Barnhart*, 78 Fed. App'x. 808, 813 (3d Cir. 2003) (quoting SSR 00-4p). The regulations and case law provide that it is within the ALJ's discretion to utilize a vocational expert at step four in determining whether a claimant may return to her past relevant work. *Mays*, 78 Fed. App'x. at 813–14; *see also Landetta v. Comm'r*, 191 Fed. App'x. 105, 111 (3d Cir. 2006); 20 C.F.R. § 404.1560(b)(2) (explaining that when assessing a claimant's ability to engage in past relevant work, "[a] vocational expert or specialist *may* offer relevant evidence") (emphasis added); SSR 00-4p. Consequently, an ALJ's decision not to call a vocational expert is reviewed for abuse of discretion.

In *Mays*, the Court of Appeals for the Third Circuit found that it was not an abuse of discretion for an ALJ to make a determination of the claimant's ability to engage in past relevant work without the aid of a vocational expert. 78 Fed. App'x at 814. This decision required the ALJ to examine vocational descriptions included in the DOT and reconcile them with claimant's testimony to determine whether the claimant could engage in past relevant work. *Id.* In addition, the court in *Rivera v. Barnhart* found that the use of a vocational expert at step four was unnecessary where the DOT defined an occupation as performed in the national economy, and "the ALJ determines that the claimant could return to his or her past work as he or she actually performed it." 239 F. Supp. 2d 413, 420–21 (D. Del. 2002). On the other hand, when issues surrounding whether a claimant can return to her past relevant work are more complicated, courts have reinforced the necessity of vocational expert testimony at step four of the evaluative process. For example, the need for a vocational expert to address complicated issues arising at step four was explained in *Johnson v. Barnhart*, 66 Fed. App'x. 285, 289-90 (3d Cir. 2003). There, the Third Circuit remanded the case when the ALJ failed to call a vocational expert to determine whether the claimant could return to her past relevant work, which was classified as sedentary under the DOT. *Id.* at 289-90. The ALJ reached his conclusion despite the finding that the claimant could not engage in the full range of sedentary work, thus calling into question whether the claimant could return to her work as she actually performed it prior to her alleged date of disability. *Id.* at 290.

---

[4]Furthermore, the Court notes that while Flores claims she is unable to perform these jobs given her limited education and illiteracy, she nevertheless performed them in the past.

Here, the facts indicate that the ALJ did not abuse his discretion in failing to call a vocational expert to assist in the determination of Flores's ability to engage in her past relevant work. Specifically, ALJ O'Leary was able to rely on the DOT to determine that Flores's past relevant work was "light in its exertional level" and that Flores "retain[ed] the . . . residual functional capacity to perform light work activity." (R. at 25–26.) In contrast to *Johnson v. Barnhart*, the ALJ did not place any restrictions on how Flores could actually perform her past work. (R. at 25–26.) The ALJ was not required to make the more complicated determinations which would have arisen had he found Flores to be able to engage in light work, but unable to perform the full range of light work. *Johnson*, 66 Fed. App'x at 290. Thus, it cannot be said that the ALJ abused his discretion in failing to call a vocational expert to aid his step four analysis of whether Flores could engage in her past relevant work.

**4.      Credibility of Flores' Complaints of Pain**

Next, Flores argues that the ALJ improperly discredited her subjective complaints of pain. (Pl.'s Br. at 27.) It is well-established that an ALJ is required to determine the extent to which the claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). Under the current statutory regime, a claimant's statements about her pain do not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c). Rather, a disability must be proven through objective medical evidence. Furthermore, the ALJ should consider a claimant's daily activities, the location, frequency, and intensity of the pain and symptoms, the type and dosage of pain medication, and any other measures used to relieve the alleged pain. 20 C.F.R. § 404.1529(c)(3). In making such determinations, the ALJ is given great discretion and his findings are entitled to judicial deference. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Here, the Court is satisfied that the ALJ properly assessed Flores's credibility. First, the ALJ determined that objective medical evidence contradicted her complaints of pain. Specifically, the ALJ noted that (1) the January 2002 bone densitometry showed no signs of neurological radiculopathy; (2) her treating physician reported that she is neurologically intact with no motor or sensory deficits in any extremities; (3) her gait and coordination are normal; (4) her treating physician could not "pinpoint any neurological problems"; (5) Dr. Friedman's consultative examination reported findings of full strength in all extremities, her reflexes were symmetric in all extremities, she had normal fine and gross coordination, and full range of motion in the cervical and lumbosacral aspects of the spine as well as the extremities; (6) the February 2004 electromyography showed no evidence of cervical radiculopathy; and (7) the results of an EEF and MRI scan of the brain were normal. (R. at 24.) Furthermore, the ALJ made numerous findings regarding her daily activities. Specifically, the ALJ noted that (1) Flores is essentially independent in her daily activities; (2) she attends morning mass services, performs household chores, shops, drives a car, prepares meals, visits friends, and runs errands; (3) she only sees her doctor every two or three months on an as needed basis; (4) her doctor only told her to stay out of work temporarily; (5) she does not take any prescription medication; and

(6) she underwent four months of physical therapy, but no other modalities of pain treatment. (R. at 24-25.) Based on the foregoing, it is clear that the ALJ's decision to discount the credibility of Flores's subjective complaints of pain was based on substantial evidence.

Flores argues, though, that the ALJ failed to find that her "numerous impairments . . . could 'reasonably be expected' to produce the symptoms reported." (Pl.'s Br. at 28.) This argument, though, is meritless. Under the substantial evidence standard, this Court's inquiry is limited to whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. Thus, Flores's argument that her impairments "could reasonably be expected to produce the symptoms reported" is irrelevant if the ALJ's finding is supported by substantial evidence. (Pl. Br. at 28.) This Court could reverse only if it finds that a reasonable person could not accept the ALJ's reasoning as adequate to support his conclusion that Flores's testimony was not entirely credible. *Pierce*, 487 U.S. at 565. Here, the ALJ based his credibility determination on substantial evidence.

Next, Flores argues that the ALJ improperly rejected her testimony "by focusing upon the type of treatment received, as well as her limited daily activities." (Pl.'s Br. at 28.) This is incorrect. As explained above, an ALJ is allowed to consider a claimant's daily activities in assessing her symptoms, including pain. 20 C.F.R. § 404.1529(c)(3). Furthermore, the ALJ did not rely solely on Flores's daily activities in assessing her complaints of pain. He also considered objective medical evidence and her treatment history. Accordingly, Flores's argument on this point is also incorrect.

Flores also faults the ALJ for not examining the credibility factors set forth in SSR 96-7p. (Pl.'s Br. at 31.) SSR 96-7p requires that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." The SSR further mandates that the "determination ... must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to ... any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. In addition, the SSR provides factors the adjudicator must consider in addition to the objective medical evidence when assessing a claimant's credibility. These include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) the type, dosage, effectiveness, and side effects of any medication the individual receives; (4) any measures other than treatment the individual uses or has used to relieve pain and other symptons; and (5) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. This SSR is binding on the Commissioner. 20 C.F.R. § 402.35(b)(1).

After reviewing the ALJ's opinion, the Court cannot comprehend how Flores's can argue that ALJ O'Leary failed to follow the guidelines of SSR 96-7p. First, the ALJ was more than clear in providing his basis for discrediting Flores's complaints of pain. Second, it is apparent

11

that he evaluated the entire case record.  Third, he clearly assessed the above-mentioned factors and found that they contradicted her testimony.  Accordingly, the Court rejects Flores's contention that the ALJ did not follow SSR 96-7p.

In sum, the Court finds that the ALJ's decision to discount Flores's credibility was supported by substantial evidence.

## Conclusion

For the foregoing reasons, ALJ O'Leary's decision is **AFFIRMED**.  An appropriate Order accompanies this Letter Opinion.


                                            s/William J. Martini
                                            **William J. Martini, U.S.D.J.**